## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **JACOB BARNES** | **CASE NO. 1:21-CV-00024** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER LLC ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |
| | |
| **D&J INVESTMENTS OF** | **CASE NO. 1:23-CV-00508** |
| **CENLA LLC** | **JUDGE DAVID C. JOSEPH** |
| **VERSUS** | **MAGISTRATE JUDGE PEREZ-MONTES** |
| **DRESSER LLC ET AL** | |
| | |
| **RAY ARNOLD** | **CASE NO. 1:23-CV-01795** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER LLC ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## <u>MEMORANDUM RULING</u>

Before the Court are several motions filed in the above-captioned Related Cases: (1) a MOTION TO DISMISS PURSUANT TO *LONE PINE* ORDER [Doc. 372] and (2) a MOTION TO STRIKE UNTIMELY AFFIDAVIT OF DR. STEVEN B. BIRD [Doc. 383], both filed by the Dresser entities (hereinafter, "Dresser");[1] and (3) a MOTION TO DISMISS PURSUANT TO THE *LONE PINE* ORDER [Doc. 373], filed by General Electric Company, all filed in the *Barnes* matter; (4) a MOTION TO DISMISS PURSUANT TO *LONE PINE* ORDER [Doc. 196]; and (5) a MOTION TO STRIKE UNTIMELY AFFIDAVIT OF DR. STEVEN B. BIRD [Doc. 199], both filed by the Dresser entities in the *D&J* matter; and (6) a

---

[1]     The Dresser entities are: Dresser, LLC; Dresser RE, LLC; Baker Hughes Company; Baker Hughes Holdings, LLC; Baker Hughes, Inc. (now known as Baker Hughes Holdings, LLC); Baker Hughes, a GE Company, LLC (now known as Baker Hughes Holdings, LLC); Baker Hughes Energy Services, LLC; GE Oil & Gas, LLC (now known as Baker Hughes Energy Services, LLC); GE Oil & Gas, Inc. (now known as Baker Hughes Energy Services, LLC); EHHC NewCo, LLC; and CFC Holdings, LLC (collectively, "Dresser"), one or more of which is named in each of the Related Cases.

MOTION TO DISMISS PURSUANT TO *LONE PINE* ORDER [110]; and (7) a MOTION TO STRIKE UNTIMELY AFFIDAVIT OF DR. STEVEN B. BIRD IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO *LONE PINE* ORDER [Doc. 112], both filed by the Dresser entities in the *Arnold* matter. In all three cases, the MOTIONS TO DISMISS PURSUANT TO *LONE PINE* ORDER are identical and request the same relief with respect to different Plaintiffs, that is, the dismissal of Plaintiffs who Defendants allege have not complied with the Court's *Lone Pine* Order.[2] For the reasons set forth below, Dresser's Motions to Dismiss are GRANTED IN PART and DENIED IN PART; GE's Motion to Dismiss is GRANTED IN PART and DENIED IN PART; and Dresser's Motions to Strike are DENIED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

These matters—among others—arise from the operations of a now-closed pipe valve manufacturing facility located in Rapides Parish, Louisiana (the "Dresser Facility"). The Plaintiffs in the Related Cases[3] claim that the Dresser Facility

---

[2]    All of the Motions, except for the Motions in the *Arnold* case and GE's Motion in the *Barnes* case, have been fully briefed. In the *Barnes* matter, the Plaintiffs oppose the Motion to Dismiss [Doc. 379]; Dresser filed a combined reply to the Plaintiffs' opposition brief and a Motion to Strike Dr. Bird's Affidavit [Doc. 383]; and the Plaintiffs filed a sur-reply brief [Doc. 388]. In the *D&J* matter, the Plaintiffs oppose the Motion to Dismiss [Doc. 198]; Dresser filed a combined reply to the Plaintiffs' opposition brief and a Motion to Strike Dr. Bird's Affidavit [Doc. 199]; and the Plaintiffs oppose Dresser's Motion to Strike [Doc. 202]. Dresser's Motions filed in the *Arnold* case are unopposed, and GE's Motion in the *Barnes* case is unopposed.

[3]    The following Related Cases have been consolidated for discovery purposes: *Cook v. Dresser, LLC*, No. 1:21-cv-00696-DCJ-JPM (W.D. La. March 1, 2021); *Barton v. Dresser, LLC*, No. 1:22-cv-00263-DCJ-JPM (W.D. La. Jan. 26, 2022); *Barnes v. Dresser, LLC*, No. 1:21-cv-00024-DCJ-JPM (W.D. La. Jan. 6, 2021); *Arnold v. Dresser, LLC*, No. 1:23-cv-01795-DCJ-JPM (W.D. La. Dec. 27, 2023); and *D&J Investments of Cenla, LLC v. Dresser, LLC*, No. 1:23-cv-00508-DCJ-JPM (W.D. La. Apr. 18, 2023). All Related Cases, except for the *Barnes* and

improperly disposed of solvents, cutting oils, acids, and caustics, thereby contaminating the groundwater and soil in the surrounding area. The Plaintiffs further allege that this contamination migrated onto their nearby properties, causing both property damage and either present or potential future personal injury due to their exposure to the toxins.

Relevant here, all Plaintiffs in the Related Cases are subject to a *Lone Pine* Order issued by the Court on October 10, 2023 [Doc. 121; *Barnes*]; [Doc. 48; entered in *D&J* on January 25, 2024]; [Doc. 19; entered in *Arnold* on January 25, 2024]. This Order required the following compliance: (1) any Plaintiff who had not done so was required to produce to Defendants a completed Plaintiff Information Sheet;[4] and (2) each Plaintiff claiming a personal injury sustained as a result of exposure to trichloroethylene (TCE) or tetrachloroethylene (PCE), either to himself or herself, or on behalf of a minor or decedent, was required to serve on the Defendants a sworn affidavit from a licensed physician or other qualified expert, or both, as may be necessary, which sets forth the following for each claimant:

    a. A list of all specific injuries, illnesses, or conditions that the claimant suffered as a result of the alleged exposure to TCE or PCE;

    b. The date(s) on which each such injury, illness, or condition was first suffered by the claimant and the date(s) on which a physician or other health care professional examined or treated the claimant for

---

*Cook* cases, are currently stayed, and some of the cases are in various stages of settlement negotiations.

[4]    The Plaintiff Information Sheet requires basic, non-legal information, including identifying information, address, domestic status, property information, and information related to any personal injury claims asserted, including illnesses or conditions allegedly caused by exposure to TCE and/or PCE, symptoms, physicians consulted, and the amount of medical expenses incurred as a result.

the injury, illness, or condition allegedly caused by exposure to TCE or PCE;

c.  An explanation of the manner of exposure (i.e., ingestion, inhalation, dermal contact, etc.), the dates of exposure, and the duration of exposure;

d.  The name and address of each physician or other medical care provider who treated the claimant, a summary of the treatment provided, and any diagnosis;

e.  An opinion, based on a reasonable degree of medical or scientific probability, that the claimed injury, illness, or medical condition was caused by the exposure to TCE or PCE; and

f.  A descriptive narrative and list of source materials, if any, providing the scientific and medical basis for any expert's opinion that the claimed injury, illness, or medical condition may be caused by exposure to TCE or PCE.[5]

[Doc. 121, *Barnes*]; [Doc. 48, *D&J*]; [Doc. 19, *Arnold*].

The central dispute presented in the Motions is whether the evidence provided by certain Plaintiffs in response to the Court's *Lone Pine* Order is sufficient, or whether the Plaintiffs have failed to comply with the Order and are subject to the dismissal of some or all of their claims.  All issues having been fully briefed, the Motions are ripe for review.

## LAW AND ANALYSIS

*Lone Pine* orders "are designed to handle the complex issues and potential burdens on defendants and courts in mass tort litigation," *Acuna v. Brown & Root,*

---

[5]     In *Barnes*, Plaintiff Information Sheets were due no later than November 17, 2023, while medical evidence was due no later than February 9, 2024.  In *D&J* and *Arnold*, Plaintiff Information Sheets were due on February 28, 2024, and medical evidence was due on or before May 25, 2024.

*Inc.,* 200 F.3d 335, 340 (5th Cir.2000), and are "routinely used ... to streamline litigation in mass tort cases" and to identify and cull potentially meritless claims. *Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 178 (3rd Cir. 2021), *citing In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d 741, 743-44 (E.D. La. 2008), *aff'd,* 388 F. App'x 391 (5th Cir. 2010) (collecting cases). *See Lore v. Lone Pine Corp.* 1986 WL 637507, *1-*3 (N.J. Super. Nov. 18, 1986) (court approved a pre-trial order requiring plaintiffs to provide basic facts in the form of expert reports or run the risk of having their case dismissed). The Fifth Circuit has recognized the value and approved the use of *Lone Pine* orders in mass tort litigation. *See Acuna*, 200 F.3d at 340 (Fifth Circuit affirmed district court's dismissal of claims under Lone Pine Order and held district court was within its discretion to issue a scheduling order that "essentially required that information that plaintiffs should have had before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3).").  In *Acuna*, the Court explained the nature of *Lone Pine* evidence as follows:

> Each plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries.

200 F.3d at 340.

Although the Fifth Circuit has approved the use of *Lone Pine* orders, the court "has not endorsed an analytical framework for determining whether they are appropriate in a given case." *Jackson Water Master Case v. City of Jackson, Mississippi*, 2023 WL 8789746, at *5 (S.D. Miss. Dec. 19, 2023) (denying motion to enter *Lone Pine* order). And courts have recognized the tension between *Lone Pine*

orders and the procedural safeguards embedded in the Federal Rules of Civil Procedure. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014) (cautioning against *Lone Pine* orders "as platforms for pseudo-summary judgment motions" inconsistent with both the pleading requirements of Rule 8 and the summary judgment requirements of FRCP 56); *McManaway v. KBR, Inc.*, 695 F. Supp. 2d 883, 897–98 (S.D. Ind. 2010) (warning that a Lone Pine order "should not become a surrogate for summary judgment practice"). *Lone Pine* orders are issued under the wide discretion afforded federal judges under Rule 16. *Matter of AET Inc. Ltd.*, 2015 WL 13745436, at *2 (E.D. Tex. Oct. 13, 2015), *citing Acuna*, 200 F.3d at 340; *In re Vioxx Prods. Liab. Litig.*, 557 F. Supp. 2d at 743-44. Most importantly, in administering the *Lone Pine* Order, courts must strike a balance between the efficiencies such an order is designed to promote and the risk of unfairness that may result from imposing premature evidentiary burdens. *McManaway*, 265 F.R.D. at 385 ("In crafting a Lone Pine order, a court should strive to strike a balance between efficiency and equity.").

Thus, while the utility and propriety of *Lone Pine* orders in mass tort litigation is clear, the standards governing their enforcement is fact-dependent and within the wide discretion of the presiding Court. Clearly, a district court may dismiss an action or proceeding if a party fails to obey a pretrial order. *See* Fed. R. Civ. P. 16(f); *see also Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006); *Bann v. Ingram Micro, Inc.*, 108 F.3d 625, 627 (5th Cir. 1997).[6] But although some courts analyze

---

[6]    The standard for dismissal under Rule 16(f) is the same standard used when evaluating dismissal for failure to prosecute under Rule 41(b). *Price v. McGlathery*, 792 F.2d

*Lone Pine* orders through the lens of Fed. R. Civ. P. 16, other courts disregard Rule 16 entirely in deciding whether to dismiss claims for failure to comply with such orders. Courts that enforce *Lone Pine* orders with dismissal consistently emphasize that these orders require minimal, foundational proof and not full-blown expert reports, as well as the inherent power to manage their dockets under FRCP 16. *See, e.g., Lone Pine*, 1986 WL 637507 (entire case dismissed with prejudice, in part, because of plaintiffs' failure to provide sufficient evidence in response to *Lone Pine* order); *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 2024 WL 3423709, at *3 (3rd Cir. 2024) (Third Circuit affirmed district court's dismissal of 1,189 cases for failure to comply with a *Lone Pine* order, concluding that the district court was not required to resolve the cases through summary judgment); *Acuna, supra*.

However, courts that reject dismissals tend to focus on *Lone Pine* orders that are issued prematurely without meaningful discovery and without regard to other procedural safeguards. *See, e.g., Adinolfe* 768 F.3d at 1169 (explaining why a *Lone Pine* order should not be used as a pre-discovery case management tool before a district court rules on the legal sufficiency of a complaint, and reversing district court's dismissal of claims where district court improperly relied, in part, on evidence in the *Lone Pine* order in dismissing claims); *Simeone v. Girard City Bd. of Edn.*, 872 N.E.2d 344, 354 (Ohio 2007) (appellate court found that trial court abused its

---

472, 474 (5th Cir. 1986). In the Fifth Circuit, a district court may dismiss with prejudice for failure to prosecute only when: (1) the plaintiff's conduct establishes a clear record of delay or contumacious conduct, and (2) a lesser sanction would not better serve the best interests of justice. *See McNeal v. Papasan*, 842 F.2d 787, 790 (5th Cir. 1988); *see also Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008).

discretion in issuing *Lone Pine* order at a stage in proceedings when there had yet to be any meaningful discovery, followed by the dismissal of the case with prejudice for failure to comply); *McManaway*, *supra*.

With the foregoing standards in mind, the Court turns its attention to the Motions.

## I.    Dresser's Motions to Dismiss

In its Motions to Dismiss, Dresser seeks the dismissal of the following: (1) the claims of Plaintiffs who failed to submit complete Plaintiff Information Sheets; (2) the personal injury claims of Plaintiffs who failed to submit the sworn affidavit required by the *Lone Pine* Order; and (3) the personal injury claims of Plaintiffs who submitted the "Limited Declaration" of Dr. Nachman Brautbar, which fails to comply with the requirements of the *Lone Pine* Order.

### A.    *Barnes* [Doc. 372]

Dresser seeks dismissal of *Barnes* Plaintiff Breana Butler for failure to provide a Plaintiff Information Sheet.  *See* Updated Appendix 1, attached to Dresser's reply brief [Doc. 383-2].  But review of the record shows that Ms. Butler did, in fact, produce an updated Plaintiff Information Sheet to Dresser on November 15, 2023.  [Doc. 388-1]. This production satisfies Ms. Butler's obligation, and her claim will not be dismissed on this ground.

Dresser also seeks dismissal of all *Barnes* Plaintiffs who failed to substantiate their personal injury claims with "a sworn affidavit from a licensed physician or other

qualified expert" as required by the *Lone Pine* Order.[7]   The *Barnes* Plaintiffs respond that, rather than provide a separate physician affidavit for each Plaintiff, they produced a "Limited Declaration" authored by Dr. Nachman Brautbar (the "*Barnes* Brautbar Declaration"), and this Declaration satisfies the *Lone Pine* requirements of <u>all</u> *Barnes* Plaintiffs who allege personal injury claims.[8]   [Doc. 372-6].   First, the *Barnes* Plaintiffs argue that Dr. Brautbar's Declaration provides evidentiary support for all *Barnes* Plaintiffs alleging a fear of contracting a disease in the future, because Dr. Brautbar assesses the risk of TCE exposure and the legitimacy of fear of disease,

---

[7]    Dresser argues that there are 123 such Plaintiffs in the above-captioned cases: two are *Arnold* Plaintiffs; 58 are *Barnes* Plaintiffs; and 63 are *D&J* Plaintiffs.  *See* Updated Appendix 2, attached to Dresser's reply brief [Doc. 383-3, *Barnes*]; [Doc. 199-3, *D&J*]. Confusingly, Dresser also argues in Section B of its Memorandum that "all 358 Plaintiffs in the Related Cases" pleaded personal injury claims in their complaints, but that "257 of these Plaintiffs failed to produce affidavits and thereby violated the Lone Pine Order." [Doc. 372-1, p. 15].  To support this argument, Dresser cites to the Complaints in the *Barnes*, *Barton*, *Cook*, *D&J*, and *Arnold* cases.  Yet the instant Motion is filed only in the *Barnes*, *D&J*, and *Arnold* cases, and the Appendices attached to Dresser's briefing refers only to the Plaintiffs in these three cases.  For their part, the *Barnes* Plaintiffs argue that there are 131 total *Barnes* Plaintiffs and of that total, 15 have not alleged personal injury claims; of the remaining 116, *all* of them assert a fear of contracting an illness because of their TCE or PCE exposure; and 74 of them allege personal injury with specific maladies or symptoms.  [Doc. 379-1].

The competing headcounts offered by the parties rest on mismatched classifications that obscure rather than assist the legal inquiry.  Because the precise number of individuals affected does not control the outcome, the Court declines to reconcile the parties' figures.  The question before the Court is a legal one, and the Court will resolve it on that basis.

[8]    Dr. Brautbar is a Nevada physician and medical school professor who practiced for more than 40 years in the field of occupational medicine.  In his Declaration, Dr. Brautbar states: "Since 1980, I have engaged in the private practice of medicine focusing on internal medicine, nephrology, occupational medicine and toxicology. In my practice, I examine, diagnose and treat patients with occupational, nonoccupational, and toxic-related diseases, as well as occupational and nonoccupational internal medicine disease, kidney diseases and hypertension diseases." [Doc. 372-6, *Barnes*, p. 9].  Dr. Brautbar died in April 2025.

based on a substantial amount of peer-reviewed scientific literature.  Second, the *Barnes* Plaintiffs contend that Dr. Brautbar's Declaration provides evidentiary support for Plaintiffs alleging specific maladies or symptoms, because Dr. Brautbar identifies each Plaintiff's "presumed" exposure, reported maladies, and treatment, including the physicians they consulted.

The *Barnes* Plaintiffs further argue that cases involving *Lone Pine* dismissals are largely limited to those with a clear record of delay by the claimant and the failure to produce *any* information.  *See, e.g., Matter of AET Inc. Ltd.*, 2015 WL 13745436, at *3 (E.D. Tex. Oct. 13, 2015).  And while the *Barnes* Plaintiffs acknowledge that Dr. Brautbar is not able to fully satisfy the requirements of item (e) of the *Lone Pine* Order—which requires an opinion on specific causation (*i.e.*, that the claimed "injury, illness or medical condition was caused by exposure")—they argue that any delay in the development of evidence was occasioned by the unusual litigation track of this case and not delay on the part of the Plaintiffs.  Addressing the lack of data for each Plaintiff with respect to the issues of exposure and dose, Dr. Brautbar states:

> At this time, in order to opine on the causal relationship between the TCE plume and the maladies reported by the Plaintiffs, assumptions must be made regarding both exposure and dose, because neither the concentrations nor length of actual exposure are known. While it is impossible to know with certainty whether anyone was actually exposed to hazardous substances prior to 2016 and, if so, to what extent, or for how long, it is also impossible to conclude that individuals living over or near the TCE plume were not exposed.  Given what is known—that a large TCE plume formed over decades—it is reasonable to assume that persons living in close proximity to the plume were in fact exposed to TCE at some concentration for some period of time."

[Doc. 372-6, ¶¶ 52-53, *Barnes*]; [Doc. 198-3, ¶¶ 52-53, *D&J*].

Dresser argues generally that Dr. Brautbar's *Barnes* Declaration is generic, non-specific, and formulaic. Specifically, Dresser argues that Dr. Brautbar's failure to identify and discuss the manner, dates, and duration of exposure to TCE or PCE for each Plaintiff is fatal to their personal injury claims. And Dresser further contends that Dr. Brautbar's reason for not providing that information—a lack of data—is unacceptable given the amount of time the cases have been pending and the thousands of samples that have been collected from groundwater, soil, soil gas, indoor air, and ambient air.

The Court reviewed Dr. Brautbar's *Barnes* Declaration, a roughly 300-page document divided into three main sections. The first section is a 150-page compilation of extensive scientific information discussing TCE and TCE exposure, including dose response; absorption and metabolism of TCE; minimum risk levels for exposure to TCE; and genotoxicity and carcinogenicity data for TCE. [Doc. 372-6, ¶¶ 1-244]. The second section is dedicated to the claims of the *Barnes* Plaintiffs who allege specific maladies or symptoms as a result of TCE exposure. *Id.* at ¶¶ 245-541. For each such Plaintiff, the Declaration tracks the language of the *Lone Pine* Order and contains a description of the Plaintiff's exposure to TCE (which, because of the aforementioned lack of data, is an *assumption* that each Plaintiff was exposed to various levels of TCE and PCE from the Dresser Facility), as well as reported injuries, illnesses, and conditions, any treatment obtained, and Dr. Brautbar's opinion that the Plaintiff's reported illness "may have been" caused or worsened by exposure to TCE or PCE from the Dresser Facility. *See, e.g.,* [Doc. 372-6, ¶¶ 385-88]. The third

section of the Declaration is dedicated to the issue of medical monitoring. *Id.* at
¶¶ 542-635.

Here, Dr. Brautbar's Declaration contains a comprehensive presentation of
peer-reviewed literature discussing the symptoms associated with acute exposure to
TCE, which appear to be consistent with many of the symptoms experienced by the
*Barnes* Plaintiffs. While the evidence regarding causation and the precise connection
between exposure and each Plaintiff's condition may be limited, the Plaintiffs that
are included in the *Barnes* Brautbar Declaration have mechanically included the
requested categories of information, even though such information is not fully
complete and has not yet been determined to be sufficient under the *Daubert*
standards for purposes of trial. More specifically, each *Barnes* Plaintiff in the
Brautbar Declaration has facially supplied sufficient evidence regarding the nature
of their injuries, the circumstances under which they could have been exposed to TCE
and/or PCE, and the basis for believing that Dresser is responsible for their injuries.
*In re Vioxx*, 557 F. Supp. 2d at 744-45 (requiring plaintiffs to make a minimal showing
consistent with Rule 26 that there is *some kind of scientific basis* that Vioxx *could*
cause the alleged injury) (emphasis added). To that extent, these *Barnes* Plaintiffs
in the Brautbar Declaration satisfy the requirements of the *Lone Pine* Order and their
personal injury claims will survive the instant Motion. Nevertheless, the Court notes
that the "cut-and-paste" nature of the *Barnes* Brautbar Declaration and the lack of
more specific evidentiary support—particularly as it pertains to the issue of specific

causation—demonstrates that the claims are likely vulnerable to well-founded motions for summary judgment.

Thus, to the extent that a *Barnes* Plaintiff has asserted a personal injury claim and relies upon the evidence set forth in the *Barnes* Brautbar Declaration, that Plaintiff satisfies the *Lone Pine* Order, and Dresser's motion to dismiss a Plaintiff's personal injury claims for failure to provide a separate physician affidavit will be denied.  To the extent that there is any *Barnes* Plaintiff who does not appear in the *Barnes* Brautbar Declaration or has not otherwise provided responsive *Lone Pine* medical evidence, Dresser's motion to dismiss will be granted and the personal injury claims of those Plaintiffs will be dismissed.

### B.    *D&J* [Doc. 196]

Dresser seeks dismissal of the following *D&J* Plaintiffs on grounds they did not provide a Plaintiff Information Sheet: Darwin Oliver Arlington; Barfield Insurance Agency, LLC; Cayse Collision Repair, LLC; Colfax Banking Company; D&J Investments of Cenla, LLC; Sandra J. Fountain; Johnny Gilley; Deborah H. Greer; James W. Greer, Jr.; Inspirational Properties, LLC; Shane Morgan; Rapides Investments, LLC; Autumn Shirah; Daniel L. Webb; and William R. Woodward, Jr. *See* Updated Appendix 1, attached to Dresser's reply brief.  [Doc. 199-2, *D&J*].

The *D&J* Plaintiffs identified by Dresser do not dispute that they failed to provide Plaintiff Information Sheets.  Despite clear notice of the obligation to provide Plaintiff Information Sheets, these *D&J* Plaintiffs submitted nothing, and their

failure to provide this most basic information constitutes abandonment of their claims. Dismissal is therefore warranted.

Dresser also seeks dismissal of all *D&J* Plaintiffs who allege personal injury claims but who failed to file corresponding physician affidavits. Like the *Barnes* Plaintiffs, the *D&J* Plaintiffs produced a "Limited Declaration" authored by Dr. Brautbar rather than producing a separate physician affidavit for each Plaintiff (the "*D&J* Brautbar Declaration"), and they argue that their submissions similarly satisfy all requirements of the *Lone Pine* Order. [Doc. 198-3]. Specifically, the *D&J* Plaintiffs argue that Dr. Brautbar opined that their symptoms can be caused by, and are associated with, exposure to TCE and PCE, which is supported by the scientific and medical literature cited by Dr. Brautbar. The *D&J* Plaintiffs argue the unfairness of the *Lone Pine* Order and urge this Court to defer consideration of these evidentiary questions until the *Daubert* hearings.

However, unlike the *Barnes* Plaintiffs, Dr. Brautbar's *D&J* Declaration provides a medical summary for only 25 of the 86 *D&J* Plaintiffs.[9] The 61 *D&J* Plaintiffs who do <u>not</u> appear in the Declaration have provided this Court with no medical evidence linking their alleged personal injury claims to exposure, and the record is devoid of any other form of compliance with the *Lone Pine* Order. Nor did

---

[9]    To the extent the Court's calculations or headcounts are incorrect, any such errors are immaterial. Dismissal of particular Plaintiffs is governed by the Court's legal findings regarding noncompliance with the *Lone Pine* Order, rather than by the numerical totals or identifications assigned by the parties or by the Court.

these Plaintiffs attempt to produce such evidence, albeit untimely, at the time they opposed the instant Motion.

Consequently, for the same reasons set forth with respect to the *Barnes* Plaintiffs, to the extent a *D&J* Plaintiff has asserted a personal injury claim and relies upon the evidence set forth in the *D&J* Brautbar Declaration, Dresser's Motion to dismiss these claims will be denied, while Dresser's Motion will be granted as to all *D&J* Plaintiffs who do not appear in the Declaration. By the Court's estimation, all of the 15 *D&J* Plaintiffs who failed to provide a Plaintiff Information Sheet also failed to provide medical evidence, except for one—William R. Woodward, Jr.—who will be permitted to provide a Plaintiff Information Sheet or risk dismissal of his personal injury claims.

### C. *Arnold* [Doc. 110]

Finally, Dresser seeks dismissal of *Arnold* Plaintiffs Karrie A. Arnold and Ray A. Arnold on two grounds: (1) failure to provide Plaintiff Information Sheets; and (2) failure to provide physician affidavits to support their personal injury claims. Review of the record confirms that these Plaintiffs failed to provide both categories of requested information. The *Arnold* Plaintiffs have failed to comply with the *Lone Pine* Order, and it is therefore presumed that these Plaintiffs have abandoned their claims, which are subject to dismissal.

## II. GE's Motion to Dismiss [Doc. 373, *Barnes*]

In its Motion to Dismiss, GE seeks the same relief as Dresser and adopts and incorporates the arguments set forth in Dresser's Motion. However, GE contends

that the Plaintiffs' *Lone Pine* deficiencies are even more pronounced as to GE, whose alleged role in this matter has already been recognized by this Court as limited to its alleged failure to warn and alleged failure to appropriately remediate for a defined, limited period in time. But GE's argument is not persuasive, because the *Lone Pine* Order addresses the preliminary proof of Plaintiffs' damages, not the liability of any Defendant. Accordingly, GE is entitled only to the same relief as Dresser.

## III.    Dresser's Motion to Strike [Doc. 383, *Barnes*] [Doc. 199, *D&J*]

Following the death of Dr. Brautbar in April 2025, on October 1, 2025, the *Barnes* and *D&J* Plaintiffs provided a report authored by Dr. Steven B. Bird to opposing counsel (the "Bird Report"). The *Barnes* & *D&J* Plaintiffs argue that the Bird Report was occasioned by the death of Dr. Brautbar and not the *Lone Pine* Order, and that they did not rely on the Bird Report in responding to the instant Motions. Rather, the Plaintiffs aver that the Bird Report merely adopts the Brautbar Declarations, updates Dr. Brautbar's causation opinions, and will not be relied upon by Plaintiffs until the upcoming motion practice. Possibly because the *Barnes* and *D&J* Plaintiffs attached the Bird Report to their opposition briefs to Dresser's Motion to Dismiss, *see* [Doc. 379-3, *Barnes*]; [Doc. 198-4, *D&J*], Dresser now contends that the Plaintiffs are, in effect, attempting to buttress Dr. Brautbar's insufficient Declarations with the Bird Report, and that the attempt to do so is untimely under the Court's *Lone Pine* Order.

After review of the record, it is clear to the Court that the *Barnes* and *D&J* Plaintiffs did not rely on the Bird Report in connection with their responses to

Dresser's *Lone Pine* Motions, and, even if they did, the Court did not consider the Bird Report in adjudicating the instant Motions. Accordingly, it is unnecessary to strike the Bird Report.

C<span style="font-variant:small-caps">ONCLUSION</span>

Considering the foregoing,

The following Orders are entered:

### *Barnes*, Civil Action No. 1:21-cv-00024

IT IS HEREBY ORDERED that Dresser's M<span style="font-variant:small-caps">OTION TO</span> D<span style="font-variant:small-caps">ISMISS</span> P<span style="font-variant:small-caps">URSUANT TO</span> *L<span style="font-variant:small-caps">ONE</span> P<span style="font-variant:small-caps">INE</span>* O<span style="font-variant:small-caps">RDER</span> [Doc. 372] is GRANTED with respect to any personal injury claim not covered in the *Barnes* Brautbar Declaration; these claims are DENIED AND DISMISSED WITH PREJUDICE. The Motion is DENIED in all other respects.

IT IS FURTHER ORDERED that Dresser's M<span style="font-variant:small-caps">OTION TO</span> S<span style="font-variant:small-caps">TRIKE</span> U<span style="font-variant:small-caps">NTIMELY</span> A<span style="font-variant:small-caps">FFIDAVIT OF</span> D<span style="font-variant:small-caps">R.</span> S<span style="font-variant:small-caps">TEVEN</span> B. B<span style="font-variant:small-caps">IRD</span> [Doc. 383] is DENIED.

IT IS FURTHER ORDERED that GE's M<span style="font-variant:small-caps">OTION TO</span> D<span style="font-variant:small-caps">ISMISS</span> P<span style="font-variant:small-caps">URSUANT TO THE</span> L<span style="font-variant:small-caps">ONE</span> P<span style="font-variant:small-caps">INE</span> O<span style="font-variant:small-caps">RDER</span> [Doc. 373] is GRANTED with respect to any personal injury claim not covered in the *Barnes* Brautbar Declaration; these claims are DENIED AND DISMISSED WITH PREJUDICE. The Motion is DENIED in all other respects.

### *D&J*, Civil Action No. 1:23-CV-00508

IT IS HEREBY ORDERED that Dresser's M<span style="font-variant:small-caps">OTION TO</span> D<span style="font-variant:small-caps">ISMISS</span> P<span style="font-variant:small-caps">URSUANT TO</span> *L<span style="font-variant:small-caps">ONE</span> P<span style="font-variant:small-caps">INE</span>* O<span style="font-variant:small-caps">RDER</span> [Doc. 196] is GRANTED IN PART AND DENIED IN PART. The claims of the following Plaintiffs are DENIED AND DISMISSED WITH PREJUDICE for failure to provide a Plaintiff Information Sheet: Darwin Oliver Arlington; Barfield Insurance Agency, LLC; Cayse Collision Repair, LLC; Colfax Banking Company; D&J Investments of Cenla, LLC; Sandra J. Fountain; Johnny Gilley; Deborah H. Greer; James W. Greer, Jr.; Inspirational Properties, LLC; Shane Morgan; Rapides Investments, LLC; Autumn Shirah; Daniel L. Webb; and William R. Woodward, Jr. Dresser's Motion is GRANTED with respect to any personal injury claim not covered in the *D&J* Brautbar Declaration; these claims are DENIED AND DISMISSED WITH PREJUDICE. The Motion is DENIED in all other respects.

IT IS FURTHER ORDERED that Dresser's MOTION TO STRIKE UNTIMELY AFFIDAVIT OF DR. STEVEN B. BIRD [Doc. 199] is DENIED.

IT IS FURTHER ORDERED that, **within three (days)**, *D&J* Plaintiff William R. Woodward, Jr. shall provide a Plaintiff Information Sheet to Dresser.  Failure to provide the Plaintiff Information Sheet will result in denial and dismissal with prejudice of Mr. Woodward's claims.

### *Arnold*, Civil Action No. 1:23-cv-01795

IT IS HEREBY ORDERED that Dresser's MOTION TO DISMISS PURSUANT TO *LONE PINE* ORDER [Doc. 110] is GRANTED, and the claims of Karrie A. Arnold and Ray A. Arnold are DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the MOTION TO STRIKE UNTIMELY AFFIDAVIT OF DR. STEVEN B. BIRD [Doc. 112] is DENIED.

IT IS FURTHER ORDERED that, **within seven (7) days**, the parties shall jointly file into the record a list of Plaintiffs, organized by case, whose personal injury claims have been dismissed.

THUS, DONE AND SIGNED in Chambers on this 18th day of December 2025.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE